WILLIAM BRYANT AND JERRY HORNE *v.*
DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES

[No. 229, September Term, 1976.]

*Decided November 1, 1976.*

The cause was argued before GILBERT, C. J., and MELVIN and LISS, JJ.

*Michael A. Millemann,* with whom was *Michael S. Elder* on the brief, for appellants.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Fifty or even fewer years ago this case would never have arisen. It is only since the courts have been thrust into the business of overseeing the penal institutions that the type of litigation now before us has come to the fore, but, "[t]o everything there is a season, and a time to every purpose under the heaven." Ecclesiastes 3:1. This is the season and the time for judicial airing of inmate grievances.

Apparently, in response to the then prevailing practice of inmates of the Maryland penal institutions [1] to seek redress in federal courts for real or imagined wrongs suffered by the inmate in the institutions of this State, the Legislature, by Laws 1971, ch. 210,[2] heeded the "cries and lamentations of

---

1. For purposes of this opinion, Patuxent Institution is embraced within the ambit of "penal institutions." *See* Md. Ann. Code art. 41, § 204F (d).

2. Codified as Md. Ann. Code art. 41, § 204F.

the prisoners"[3] and established the Inmate Grievance Commission.

The Commission is charged, under the statute, with the responsibility of hearing and disposing of inmate grievances or complaints. Md. Ann. Code art. 41, § 204F (f). The statute also provides for a preliminary review by "the Commission, or any member thereof or the executive director . . ." if the Commission's rules so allow. Md. Ann. Code art. 41, § 204 (e). When the reviewing Commissioners, Commissioner, or executive director determine the grievance or complaint to be wholly devoid of merit "on its face," they may dismiss the matter "without a hearing or without specific findings of fact."[4] On the other hand, should it be determined, after preliminary review, that the grievance or complaint is not "on its face wholly lacking in merit," the Commission shall hold a hearing. A record, including the testimony presented, is kept of the proceedings. The Commission may, after hearing, dismiss the complaint, and the dismissal acts as "the final decision of the Secretary of Public Safety and Correctional Services for purposes of any judicial review." Md. Ann. Code art. 41, § 204F (f) (1). If, however, the Commission finds that the inmate's complaint is meritorious either in whole or in part, it shall promptly forward its findings and recommendations to the departmental secretary. The Secretary, within fifteen (15) days of receipt of the order of the Commission, "shall affirm . . . or shall reverse or modify the order where he disagrees with the findings and conclusions of the Commission." Md. Ann. Code art. 41, § 204F (f) (2). The Secretary, if he agrees with the Commission, is under duty to direct the implementation of the Commission's recommendations through the appropriate officials. Conversely, a reversal by the Secretary negates the Commission's finding. In any event, the Secretary's "order shall constitute the final decision for purposes of judicial review." Id.

---

3. John Adams, 1735-1826, Defense of the British Soldiers on Trial for the Boston Massacre (1770).

4. In such cases, the dismissal constitutes the final decision of the Secretary of Public Safety and Correctional Services for the purposes of any judicial review.

After exhausting his administrative remedies, the inmate is entitled to a judicial review of the "final decision" entered in his complaint proceeding. The review shall be by the circuit court of the county in which the penal institution is situated (where the inmate is confined). Md. Ann. Code art. 41, § 204F (1).[5]

The appellants, William Bryant and Jerry Horne, followed the procedure set out in the statute and eventually had a hearing in the Baltimore City Court. The court affirmed the order of the Secretary and the appellants petitioned the Court of Appeals for certiorari. The Court of Appeals directed that petition for certiorari "be considered as an appeal to" this Court.

The Attorney General has moved to dismiss the appeal on the ground that no appeal is authorized by law. The reasoning behind the motion to dismiss is that Md. Ann. Code art. 41, § 204F (1) provides in pertinent part:

> " . . . Review by the court shall be limited to a review of the record of the proceedings before the Commission and the Secretary's order, if any, pursuant to such proceedings. The court's review shall be limited to a determination of whether there was a violation of any right of the inmate protected by federal or State laws or constitutional requirements." [6]

The State reads the above quoted section of the code as not containing "any authority for a further appeal from the decision of the Circuit Court or the Baltimore City Court." Patently, then, the threshold issue before us is whether

---

5. If the inmate is confined in an institution located in the City of Baltimore, the review must be sought in the Baltimore City Court. Md. Ann. Code art. 41, § 204F (1).

6. In the original "Motion to Dismiss" filed by the Attorney General prior to the filing of his brief, he cited two cases of this Court as authority for his position, namely, Prince George's County v. Fahey, 28 Md. App. 312, 345 A. 2d 102 (1975) and American Ambulance v. City of Balto., 31 Md. App. 432, 356 A. 2d 580 (1976). Neither case lends support to the State's position as both are concerned with a local ordinance. Furthermore, neither case arises from a State agency. In any event, we denied the Motion to Dismiss as untimely. *See* Md. Rule 1036 c. The State, however, as it was entitled to do, renewed its Motion to Dismiss in its brief. Md. Rule 1036 d.

inmates aggrieved by final decisions of the Secretary of Public Safety and Correctional Services may pursue judicial review past the circuit court level.

Md. Ann. Code art. 41, § 204F (a) provides in pertinent part that, *"[t]he Inmate Grievance Commission is established as a separate agency within the Department of Public Safety and Correctional Services."* (Emphasis supplied.) The appellants argue, and we agree, that the italicized language of the statute places the Inmate Grievance Commission within the definition of a State agency as that term is defined by the Maryland Administrative Procedure Act, Md. Ann. Code art. 41, §§ 244-256A. At the time this case was decided by the Baltimore City Court, § 244 of the Administrative Procedure Act provided:

> "For the purpose of this subtitle:
>
> (a) 'Agency' means any State board, commission, department or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches, and except the Board of Parole, the Department of Parole and Probation, the Workmen's Compensation Commission, the State Accident Fund, the State Insurance Department of Maryland, the Public Service Commission, the Employment Security Board and the State Tax Commission." [7]

Not only is the Inmate Grievance Commission "authorized by law to make rules or to adjudicate contested cases," Md. Ann. Code art. 41, § 244 (a), but the latter phrase appears to be one of the prime purposes for the creation of the Commission in the first instance. *State v. McCray,* 267 Md. 111, 297 A. 2d 265 (1972). *See* Md. Ann. Code art. 41, § 204F, subsections (f) and (k). [8] Although it is true that Md. Ann.

---

7. This section was amended by Laws 1976, ch. 648, effective July 1976, to exempt from the act, under certain conditions, the Maryland Automobile Insurance Fund. The amendment has no application to the instant case.

8. Subsection (k) of Md. Ann. Code art. 41, § 204F provides: "The Commission, subject to the approval of the Secretary, shall have the power to adopt rules and regulations for the conduct of its proceeding as provided for in this section." The rules of the Commission are found in Public Safety

Code art. 41, § 204F (1) does not specifically authorize an appeal to this Court from an adverse ruling by a circuit court or the Baltimore City Court, neither that subsection of the article nor the article itself is an island standing alone without regard to other applicable laws. Md. Ann. Code art. 41, §§ 244-256A and 204F must be read together. When so read, it is beyond dispute that any party aggrieved by a decision of a circuit court or the Baltimore City Court exercising judicial review of the Secretary's order may appeal to this Court.[9]

Having successfully crossed the threshold and entered through the portal of appealability, we are now confronted with the second aspect of this appeal, *videlicet,* whether the hearing court erred as a matter of law and fact in upholding the Secretary's order.

A brief resumé of the facts out of which this matter emerged is necessary to an understanding of the principles hereinafter discussed. On November 23, 1974, officials of the Maryland Penitentiary received information from inmate Daniel Allen that there existed a conspiracy to escape from the Penitentiary, and that contraband materials could be found in the cells of Bryant and Horne. Allen, Horne's cell mate, stated that Horne had told him of the escape plan and that Bryant was the leader behind the plan. A search of the Horne-Allen cell disclosed escape tools. Similar tools were found in the ceiling near Bryant's cell. Both appellants were charged, institutionally, with possession of contraband, conspiracy to escape, and disobeying a prison rule.

On November 25, 1974, Allen gave an oral statement which was reduced to writing by Captain Stanley R. Rossman of the Penitentiary. Acknowledging its accuracy, Allen read and signed the statement. The next day the appellants received separate hearings before the Adjustment

and Correctional Services 12.07.00.00-.05. On balance, however, the rules appear to do little more than paraphrase the statute creating the Commission.

9. Md. Ann. Code art. 41, § 256A authorizes appeals to this Court by "the political subdivisions of this State and their agencies and instrumentalities. . . ." Section 256A confers upon State agencies "the status of an interested person, petitioner, or party, . . . in all matters including appeals."

Team of the Maryland Penitentiary to determine their guilt or innocence of violating prison rules. In addition to the contraband itself, the written statement of Allen was read into the record and Allen also gave oral testimony. Both appellants cross-examined Allen as to his oral and written statements. Apparently in return for his testimony, Allen was transferred to the Maryland Correctional Institution, a place of lesser security, which has more inmate privileges and a greater opportunity for parole. The Adjustment Team found appellants guilty of disobeying a prison rule, possession of contraband, and conspiracy to escape.[10]

Appellants then filed a complaint with the Inmate Grievance Commission in which they attacked the validity of the Adjustment Team's dispositions. On March 12, 1975, the Commission questioned informant Allen at the Maryland Correctional Institution. Allen stated that he feared reprisal and that under no circumstances would he testify at the Penitentiary at the appellants' hearing. Allen further told the Commission that Horne had told him of the conspiracy plan and that Allen had never spoken to Bryant. Following the hearing on the complaints of Bryant and Horne, the Commission upheld the Adjustment Team's findings with respect to disobedience and possession of contraband, but concluded that the finding of conspiracy to escape was improper.

> " . . . [T]here was no testimony or evidence before either the Adjustment Team or this Commission to establish that either complainant, individually or in concert, conspired or agreed with any other inmate to effect an escape. Mr. Allen denied any knowledge of or participation in an escape plot and no testimony was presented at either adjustment hearing to establish the necessary confederation for Messrs. Bryant or Horne to be guilty of a conspiracy."

---

10. Bryant, as a result of the Adjustment Team hearing, was ordered segregated for a period of two years. Horne was also segregated, but for eighteen months. The good conduct time of both inmates was forfeited.

That portion of the Commission's findings was reversed by the Secretary on the basis that "[t]he information originally furnished by the informant Allen to Penitentiary authorities, that Bryant and Horne were among a group of sixteen inmates planning an escape, was corroborated by the finding of escape material (diamond cutting blades, handles, sheet metal cutters and a hacksaw blade handle) in the cells of these inmates. It is difficult to imagine what reason, other than an escape attempt, there would be for an inmate in a penitentiary to maintain such equipment in his cell."

Bryant and Horne noted an appeal to the Baltimore City Court, where Judge Basil Thomas upheld the Secretary's order.

Appellants, here, assert that the hearing judge erred because he sanctioned the Secretary's substitution of his own fact finding for that of the Commission. Appellants contend in this Court that:

> "The Commission does not ... fit the intended model of a fair administrative tribunal if the court reviewing its decisions is allowed to ignore its factual findings and to give substantial deference, instead, to the findings of the Secretary, who does not hear or review the evidence presented. Nor is another policy underlying the enactment of Art. 41, § 204F — that of providing an impartial and independent body to resolve inmate grievances against corrections officials — advanced if judicial deference is accorded, by a reviewing court, to the Secretary's findings. The Secretary is the chief administrator of the corrections system, a usual defendant in litigation against that system, and responsible for the daily administration of that system. Commission members are independent from the corrections system and have no potential conflicts of interest in rendering decisions on inmate complaints against corrections officials."

Md. Ann. Code art. 41, § 204F (1) limits the court review to "the record of the proceedings before the

Commission and the Secretary's order, if any, pursuant to such proceedings." The statute creating the Commission makes it manifest that the Secretary's order, if any, is the "final decision" which is appealable where the Commission has held a hearing and made fact findings.

Under § 204F, there are three varieties of "final decisions" from which an inmate may appeal: (1) where, upon preliminary review of the grievance or complaint, it is determined to be on its face wholly lacking in merit, the grievance or complaint is dismissed without specific findings of fact by the Commission, by one of the Commissioners or by the Executive Director of the Commission; (2) where a hearing is granted, and after the hearing, the Commission finds in its order that the complaint is wholly lacking in merit and should be dismissed; and, (3) where the Commission finds, after a hearing, that the inmate's complaint is in whole or in part meritorious, the Secretary, by order, affirms the Commission's order, or reverses or modifies the order where he disagrees with the findings or conclusions of the Commission.

The appellants argue that the judicial review of the third category of orders should be directed toward the action of the Commission and not the Secretary's order. The effect of appellants' argument is to render the Secretary's order a mere procedural step in getting judicial review of the Commission's activities. Such an argument is difficult to follow in the light of the fact that no order of the Secretary is necessary for there to be a judicial review of the first two categories of "final decisions." We cannot conceive that the legislature would permit an appeal to the courts, without an order of the Secretary in what might be characterized as lesser grievances or complaints but require a mere procedural order by the Secretary as a prerequisite to appeal in what appears to be more serious matters.

As we have seen, the statute provides that the hearing court shall limit its review of the inmate grievance or complaint to the "record . . . before the Commission and the Secretary's order." In our view, the Secretary's order is an integral part of the inmate grievance procedure, with

respect to the third or ostensibly more serious matters, and subject to judicial review in conjunction with the Commission's record. Indeed, it is the Secretary's order that gives vitality to the Commission's record because without that order the record of the Commission would have no more substance than a hand full of smoke. We think, therefore, that the judicial review should determine whether there is substantial evidence in the record to support the Secretary's order. Our outlook is supported by the preamble to Laws 1971, ch. 210, where it is stated that the purpose of the act is:

"... to provide for judicial review of the decisions of the Secretary of Public Safety and Correctional Services in conjunction with inmate grievances or complaints...."

Appellants strenuously argue that the purpose of the Inmate Grievance Commission will be frustrated if it is the Secretary's order which is judicially reviewed, urging that the Secretary's role is limited to matters of law. They aver that the statute expressly provides such review and "vests the Commission with the responsibility for the fact-finding function." Aside from their reliance on the statute for support of their position, appellants assert that "[t]he [b]asic [p]olicies [u]nderlying the [c]reation of the Commission [s]upports [sic] the [p]rimacy of the Commission's [r]ole as [f]act-finder." The cases relied upon by appellants to underpin the argument are *State v. McCray*, 267 Md. 111, 297 A. 2d 265 (1972); *Washington v. Boslow*, 375 F. Supp. 1298 (D. Md. 1974); *McCray v. Burrell*, 367 F. Supp. 1191 (D. Md. 1973). The cited cases all discuss the functions of the Maryland Inmate Grievance Commission. *State v. McCray*, however, merely paraphrases the statute creating the Commission and accords due deference to the fact that judicial review is of the Secretary's order. 267 Md. at 144, 297 A. 2d at 282. In acknowledging the role of the Secretary, *McCray* goes on to express the view that: "We think that the Inmate Grievance Commission Act and the implementing rules adopted by the Commission provide 'a simple and workable procedure by which every person in confinement who has, or thinks he has, a grievance

or complaint can be heard promptly, fairly, and fully,' and obtain a judicial review with respect to his constitutional and statutory rights." *Id.* The fact that judicial review is of the Secretary's order does not create a situation where a "grievance or complaint can[not] be heard promptly, fairly, and fully." Judicial review of the Secretary's order will still enable an inmate's status to come under the scrutiny of the courts.

In *Washington v. Boslow*, 375 F. Supp. 1298 (D. Md. 1974), an inmate complained that the Inmate Grievance Commission Act violated his right to due process because of the broad authority of the Secretary to review orders. The court said at 1302 that "[t]he Secretary's review authority ... does not contravene due process since in practice he has not exercised this authority in an arbitrary or prejudicial manner, and any inclination to do so is checked by the availability of judicial review."

The Court, in *McCray v. Burrell*, 367 F. Supp. at 1207, observed that the "... Maryland Inmate Grievance Commission combines the best of both suggestions, that is, initial investigation by a non-judicial institution charged with the responsibility of investigating and assessing prisoner complaints, and provision for subsequent review by the Courts."

No language in the above-mentioned cases reenforces appellants' contention that the philosophy of the act is dampened by judicial review of the Secretary's order. Rather, the cases tend to point up the role of the Secretary and emphasize that it is the judicial review of his actions which is to occur.

Accordingly, it is the Secretary's order to which the lower court correctly applied the appropriate principles of law governing the scope of judicial review of adjudicative decision-making by an administrative agency.

This Court observes that there was substantial evidence in the Inmate Grievance Commission's record to support the Secretary's order. The Commission's record consisted, in pertinent part, of Captain Hansen's testimony wherein he described his finding of escape materials in Horne's cell, the

Adjustment Team's record of the contraband found near Bryant's cell and in Horne's cell, Bryant's admission of possession of the contraband found near his cell, Allen's oral statement as reduced to writing by prison officials in which he stated that Bryant and Horne were conspiring to escape, and a summary of Allen's testimony before the Adjustment Team.

Thus, the Secretary's finding that substantial evidence existed to establish a conspiracy to escape between Horne and Bryant has its support in the record.

With the prison authorities' discovery of contraband in various locations of the Penitentiary, a clear inference arose that a conspiracy to escape existed. As Secretary Lally puts it, ". . . what reason, other than an escape attempt, . . . would [there] be for an inmate in a penitentiary to maintain such equipment in his cell."

That such a conspiracy existed was buttressed by Allen's statement that "Jerry Horne, who was my cell partner helped to pass the blades from Crenshaw to Bryant, and he held some himself. . . . Horne discussed all this with me, and told me just how it was going down. They had an outside man all lined up. . . ." We think the discovery of the escape materials, when coupled with Allen's statement, is sufficient to find, as a matter of law, that a conspiracy did, in fact, exist.

In those situations ". . . where the declarations of the conspirator are sought to be introduced through a third person [Allen]; such third person cannot testify against the coconspirator until the latter's connection with the conspiracy is proved by evidence aliunde." 3 Underhill *Criminal Evidence* § 861 at 1930 (5th ed. 1957), cited with approval in *Irvin v. State*, 23 Md. App. 457, 471, 328 A. 2d 329, 337-38 (1974). In *Irvin* it was said that "[i]n addition to proof by independent evidence of the existence of the conspiracy, the State must also demonstrate that the declaration or act of the co-conspirator was made or done in furtherance of the conspiracy and during its pendency." 23 Md. App. at 472, 328 A. 2d at 338. Allen testified before the Commission that he was asked by Horne ". . . did I want to

go along with them. William Bryant didn't ask me, see, 'cause I didn't communicate with him under no circumstances, not William Bryant. . . . So I told them I wasn't going to get involved . . . . So then they got to saying that I know too much and all that, see. So then that's when I told the Warden down there, Mr. Hawkins, see, and then I took Mr. Hawkins to get all the escape material that they had. . . ."

Thus, with the inference of conspiracy arising from the finding of escape materials in different locations in the Penitentiary and Allen's statement as to what Horne said to Allen (which may be viewed as a conspirator's attempt to further the conspiracy), the Secretary, in our view, had before him substantial evidence in the record upon which to make his decision on the conspiracy charges.

The test to be applied by courts in reviewing the actions of an administrative agency is set out succinctly in *Snowden v. Mayor and City Council,* 224 Md. 443, 445, 168 A. 2d 390, 391 (1961). There Judge Hammond (later Chief Judge) wrote for the Court:

> "The court will correct illegal actions and those which are arbitrary and unreasonable because they are not based on substantial evidence but it will not substitute its own independent examination of or its own judgment on the facts for those of the agency to which the carrying out of state policy has been delegated."

When the instant case is viewed in the light of the *Snowden* test, we are led to conclude that the Secretary's order is not illegal, arbitrary, or unreasonable.

The appellants next contend that because they were denied the right to confront and cross-examine Allen at the Commission's hearing, the evidence supplied by him should not have been relied upon by the hearing court. Initially, we note that "[a]dministrative agencies, while not bound by common law rules of evidence, 'must observe the basic rules

of fairness as to parties appearing before them.' " *Rogers v. Radio Shack*, 271 Md. 126, 129, 314 A. 2d 113, 115 (1974).

It is true that Daniel Allen was not cross-examined at the Commission hearing. In fact, Daniel Allen refused to attend the hearing and stated that if he were compelled to be present, he would not testify.

The Inmate Grievance Commission Act provides that "[t]he inmate shall have the right to appear before the Commission and shall have the opportunity to call . . . a reasonable number of witnesses . . . . The inmate shall have a reasonable opportunity to question any witnesses who testify before the Commission. *Such rights of the inmate shall not be unreasonably withheld or restricted by the Commission*." Md. Ann. Code art. 41, § 204F (h). (Emphasis supplied.) We do not interpret this provision to mean an unqualified right of cross-examination. Rather, we view the lack of cross-examination in the case now before us in light of the then existent circumstances. In so doing, we are mindful that "[c]onfrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls." *Wolff v. McDonnell*, 418 U. S. 539, 567, 94 S. Ct. 2963, 2980; 41 L.Ed.2d 935, 957 (1974).

Cognizant of the hazards, particularly Allen's fear for his life, the lack of cross-examination afforded the appellants does not contravene basic fairness, because both Bryant and Horne acknowledged that they had the opportunity to cross-examine Allen at the Adjustment Team hearing. The Adjustment Team report reflects the nature of the cross-examination. Moreover, appellants were offered an opportunity before the Commission to air fully their complaints concerning Allen.

In sum, Bryant's and Horne's inability to cross-examine Allen at the Commission hearing did not render Allen's statement such that neither the Secretary nor the hearing judge should have considered it.

The final allegation of error raised by appellants is that "[t]he lower court erred in failing to reverse the convictions of appellants on charges of disobeying an institutional rule since that offense is identical to the offenses of conspiracy to escape and contraband." The appellants are correct in this regard. Rule 1 of the General Information and Guidance Manual for Inmates provides for action by the Adjustment Team when there is a "[d]isobeying [of] any lawful order of the Warden, Assistant Warden, or any official of the institution *or any prison rule or regulation.*" (Emphasis supplied.) From the wording of Rule 1, it is apparent that a violation of Rule 18 (contraband) and a conspiracy to escape would *ipso facto* spring Rule 1 into operation. As the Commission noted, "[b]oth inmates agreed that the charge of disobedience (Rule No. 1) is a generalized adjustment violation which usually accompanies any other specific rule infractions." The net effect of charging Bryant and Horne with violation of Rule 1, as well as conspiracy to escape and possession of contraband, is to punish them further for the conspiracy and the contraband possession.[11] If additional punishment was imposed under the guise of separate offenses, when in reality the offenses were not separate, it would be a violation of the basic rules of fairness and an affront to our concept of justice.

A denial of due process may be found not only in failing to afford that process which is due, but also in affording more process than is due.

We reverse and remand to the Baltimore City Court with instructions that it reverse the Secretary's order and remand the matter to him for further consideration in accordance with this opinion.

> *Order reversed.*
>
> *Case remanded for further pro-*
> *ceedings consistent with this*
> *opinion.*

---

11. It is possible that a violation of any other rule would also constitute a violation of Rule 1.