**UNITED STATES of America ex rel. Herbert O. SPELLER, Petitioner,**

v.

**Michael P. LANE, Respondent.**

Civ. A. No. 78–2236.

United States District Court, S. D. Illinois.

Feb. 13, 1981.

---

Jan Susler, Prison Legal Aid, Carbondale, Ill., for petitioner.

Stewart Seiffman, Springfield, Ill., Thomas C. Crooks, Ass't Atty. Gen., Chicago, Ill., for respondent.

## ORDER

FOREMAN, Chief Judge:

Before the Court is the Report and Recommendation of the United States Magistrate for the Southern District of Illinois. Counsel for both parties agreed that the record before the Court was complete and that no evidentiary hearing was required for disposition. The Magistrate recommended that this Court grant respondent's Motion for Summary Judgment and deny petitioner's request for relief. The Court has reviewed the record, the Report and Recommendation, and petitioner's subsequent objections to the Magistrate's order. For the reasons given below, the Court declines to adopt the Magistrate's conclusions.

Petitioner is an inmate at the Menard Correctional Center. On May 28, 1976, petitioner appeared before the Prison Adjustment Committee for charges relating to his alleged participation in a yard disturbance. As a result of that hearing, two years of petitioner's statutory good time were revoked. Thereafter, petitioner filed a Petition for Habeas Corpus complaining of due process violations in connection with that hearing. On September 11, 1979, this Court granted petitioner's Motion for Summary Judgment. That order stated:

> [T]his action may be disposed of on due process grounds as required by *Wolff v. McDonnell*, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974). A more definite statement of the charges and specification of evidence, as outlined in the decision, was found lacking in the present situation.

Accordingly, the Court adopted the Magistrate's recommendation that petitioner be granted a new hearing. The order provided that in the event respondent failed to grant "such a rehearing" within ninety days, petitioner's good time would be restored and any reference to the alleged incident would be removed from his record.

On December 10, 1979, exactly ninety days subsequent to this Court's rehearing, order, petitioner was summoned to appear before the Adjustment Committee. No Resident Disciplinary Report was issued with respect to this hearing and petitioner was not provided with a written statement of the charges. He was only told to appear before the Adjustment Committee in one-half hour. (Petitioner's Memorandum Supporting Petition for Rule to Show Cause, Exhibit A.) The Adjustment Committee found petitioner guilty of inciting to riot and recommended revocation of one year of good time credit. Petitioner subsequently objected that this hearing also violated his due process rights and on January 7, 1980, he filed a petition for rule to show cause why respondent should not be held in contempt of court. On February 26, 1980, petitioner was issued a Resident Disciplinary Report (ticket) for the same incident and a second rehearing was held on February 28, 1980. Once again, petitioner was found guilty of inciting to riot, which resulted in revocation of one year of good time.

This Court's order of September 11, 1979, requiring a new hearing does not specifically outline all the minimum due process requirements to which petitioner is entitled. However, it is clear from that order and the Magistrate's Report and Recommendation of August 1, 1979, which this Court adopted, that original disciplinary hearing was constitutionally defective in that it failed to meet the minimum due process standards as required by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In his Report and Recommendation, the Magistrate expressed his opinion that petitioner seeks in his present petition consideration of the rehearings which exceeds the scope of the original order. Report and Recommendation issued July 29, 1980, at 1, n. 1. Nevertheless, the Magistrate examined the hearings within the guidelines of *Wolff v. McDonnell, supra,* as petitioner suggested, and this Court will proceed in the same manner. Furthermore, having found that the original hearing did not comply with *Wolff* in several specific respects, it would be wholly inappropriate to sustain a subsequent court ordered hearing which failed to conform to those constitutional requirements in other respects. At any rate, respondent has failed to correct several of the deficiencies specifically identified in this Court's order and in the Magistrate's order, which was adopted.

At the outset, the Court finds that it would be improper to even consider the second rehearing on February 28, 1980, as that hearing occurred over two months after the expiration of the designated ninety day period. Hence, the Court's review is limited to a determination as to whether the December 1979 rehearing was in compliance with the rehearing order.

Petitioner originally alleged that the Resident Information Report issued to him on May 27, 1976, "failed to adequately provide petitioner with written notice of the charges against him, as it failed to specify with any particularity what acts he was alleged to have done." (Petitioner's Memorandum in Support of Petition for Habeas Corpus at 5.) That "ticket" stated that petitioner had been identified by various prison employees as a participant in the disturbance in question. The rehearing order found that, *inter alia,* "[a] more definite statement of the charges . . . as outlined in [Wolff] was found lacking . . ."

> Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact. *See, In re Gault,* 387 U.S. 1, 33–34 and n. 54 [87 S.Ct. 1428, 1446–1447 and n. 54, 18 L.Ed.2d 527] (1967).
>
> . . . We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him

of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

*Wolff v. McDonnell*, 418 U.S. at 564, 94 S.Ct. at 2978. Consequently, in ordering a new hearing, the Court anticipated that respondent would correct the deficiency. Unfortunately, respondent has not even attempted to comply.

Respondent contends that petitioner was aware of the charges and had ample time to prepare a defense as a result of his participation in the original hearing. (Respondent's Memorandum in Support of Motion for Summary Judgment at 4.) Even if notice of that hearing had been constitutionally sufficient, the Court would be extremely hesitant to allow it to operate as notice of a hearing conducted over three and one-half years later. Notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Court holds that in addition to describing specific conduct upon which the charges are based, the notice should also give the prisoner some reasonable indication as to when he will have an opportunity to present his defense. *See*, e. g., *Taylor v. Schmidt*, 380 F.Supp. 1222, 1232 (W.D.Wisc. 1974). In doing so, the Court takes note of the applicable regulations governing procedure for hearings before the Adjustment Committee. State of Illinois, Department of Corrections, Regulation No. 804(II)(B)(3) provides:

The notice of charge and *date of hearing* will be written legibly or typed on a pre-printed form provided to staff for this purpose. (Emphasis supplied.)

No unreasonable burden is placed upon prison administrators by simply requiring them to provide a prisoner with advance written notice of the time of each and every hearing. Furthermore, this Court previously found that the notice provided by respondent in May 1976 failed to inform petitioner of the charges against him with sufficient specificity. *See*, e. g., *Rhinehart v. Brewer*, 483 F.Supp. 165, 168–169 (S.D.Iowa 1980). Respondent cannot now claim that this deficiency was corrected under a subjective notion of constructive notice. The Court refuses to make this kind of determination concerning petitioner's state of mind. The purpose of requiring advance notice lies, in part, in preventing such post hoc speculation. Accordingly, the Court holds that respondent's failure to provide any further written notice prior to the December 1979 rehearing directly violated petitioner's constitutional right to due process of law, as well as the directives of the order in *Speller v. Lane*, Civil No. 78–2236 (September 11, 1979).

The Court agrees with the Magistrate's finding that the statement of the evidence relied upon in the Adjustment Committee Summary is adequate. The original Summary issued in May 1976 stated that the evidence relied upon consisted only of "the officer's statement and the resident's statements upon questioning." The only statements made by petitioner that appear on that Summary were exculpatory. Respondent indicates that the "officer's statements" were in fact the information contained in the Resident Information Report. *See*, Respondent's Memorandum in Support of Motion for Summary Judgment. The Summary also stated that two officers had testified that petitioner was "present at the disturbance" and that he was "with" one of the gangs involved. No evidence as to petitioner's actual participation, other than the charges on the ticket, was set forth in the Summary. This Court found that statement of the evidence relied upon failed to afford petitioner his due process rights. *Speller v. Lane*, Civil No. 78–2236 (Order issued September 11, 1979).

The Adjustment Committee Summary issued in December 1979 states that petitioner was identified by witnesses as "among the group of residents participating in the disturbance." Hence, the evidence relied upon not only indicated that petitioner w

present, it also indicated he was an active participant.

As stated in *Wolff*, the basis for the requirement rests upon the need for both the protection of the prisoner from collateral consequences of a disciplinary action and the encouragement of fair administrative decision making. *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979. The statement of evidence requirement is not satisfied where findings of fact and conclusions of law are not based upon substantial evidence.

> As a practical matter, we fail to see the conflict between the term "substantial evidence" and the phrase "evidence relied on and reasons for the disciplinary action." Presumably, the Supreme Court did not contemplate in *Wolff*, where its use of the latter phrase in connection with the array of procedural rights provided was directed at protecting prisoners from subsequent collateral consequences, that these rights should be easily emasculated by allowing prison officials to infringe arbitrarily on an inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence. *See*, e. g., *Gomes v. Travisono*, 510 F.2d 537, 540 (1st Cir. 1974); *Wilwording v. Swenson*, 502 F.2d 844, 851 (8th Cir. 1974).

*Aikens v. Lash*, 514 F.2d 55, 60 (7th Cir. 1975), *modified on other grounds*, 547 F.2d 372 (1976). Not only does the Second Summary set forth the substance of the evidence with increased specificity, it also contains the required quantum of evidence for a finding of guilt.[1]

Petitioner, nevertheless, alleges that the present Summary could not support a finding of guilt because the named witnesses were in fact never called to appear before the Committee. However, an affidavit submitted by petitioner informs that these witnesses were actually contacted on the telephone by the Chairman of the Committee. The Court accepts the Magistrate's conclusion that since an inmate has no right to confront or cross-examine an adverse witness, there is no requirement that such a witness testify before the convened Committee or in the inmate's presence. *See*, *Wolff v. McDonnell*, *supra*, 418 U.S. at 567–568, 94 S.Ct. at 2980–2981.

For the benefit of respondent's guidance in future proceedings of this nature, the Court advises the identification and documentation of the essential facts from which the elements of the prisoner's guilt are inferred. *See*, *Hayes v. Walker*, 555 F.2d 625, 633 (7th Cir. 1977), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). This requirement is particularly important where, as in this matter, the crucial testimony is phrased in essentially the same language as the official charges. Whether an inmate is a participant in a disturbance or an innocent bystander necessarily turns on what specific acts he committed. Such facts should be identified both in the notice and on the record.

Petitioner also alleges failure to comply with the rehearing order in that the December 1979 Summary does not include reasons for the disciplinary action taken. The Magistrate's Report and Recommendation (issued August 11, 1979) which that Order adopted expressly stated, "Petitioner's right to due process was violated in that the Adjustment Committee's Summary stated no reasons for the disciplinary action taken with respect to Petitioner." (Report and Recommendation at 3.) The Seventh Circuit has found that the following test is consistent with Mr. Justice White's analysis in *Wolff* of the minimum due process requirements for revocation of a prisoner's good time credit:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based

1. Additionally, the Court notes that respondent [h]as submitted a copy of the investigator's re[por]t which describes the actual incident in detail. In the future, it would be advisable to include in the Summary the relevant portions of such reports.

upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision (e. g., that in its view the prisoner would, if released, probably engage in criminal activity) and the essential facts upon which the Board's inferences are based.

*United States ex rel Richerson v. Wolff*, 525 F.2d 797, 804 (7th Cir. 1975), *cert denied*, 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976), quoting *United States ex rel Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925, 934 (7th Cir. 1974), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). No such reasons appear in the Summary of the December 1979 rehearing. This failure to state reasons for the revocation clearly violates the directives of this Court's Order of September 11, 1979.

Finally, petitioner alleges that respondent's failure to call witnesses he requested and its refusal to accept documentary evidence which he offered also violated his due process rights. The Court recognizes that the standard Resident Information Report form used by respondent includes an attached witness request slip.[2] The failure to give notice of the December 1979 hearing effectively precluded petitioner from giving advance notice to the Committee of those individuals he desired to call as witnesses. The Summary reflects petitioner's attempt to make the request at the hearing.

Petitioner's right to call witnesses was not at issue in this Court's previous consideration of this matter. However, the Supreme Court has addressed this question:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

*Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979. The Court then suggested, but did not require, that the disciplinary committee "state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* Hence, respondent must be allowed broad discretion in calling the witnesses requested by inmates. But that discretion is not unlimited. *Cardaropoli v. Norton*, 523 F.2d 990, 998 (2d Cir. 1975). Moreover, due process is violated where an inmate's request to call witnesses is automatically denied. *See*, e. g., *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir. 1976); *Powell v. Ward*, 392 F.Supp. 628, 631 (S.D.N.Y.1975), *modified on other grounds*, 542 F.2d 101 (2d Cir. 1976).

While no statement of reasons for failure to call witnesses is absolutely required, this Circuit has established the following rule:

> [S]ome support for the denial of a request for witnesses appear in the record. This will enable a court to make limited inquiry into whether the broad discretion of prison officials has been arbitrarily exercised. If we were to allow broad unsupported findings as were offered in the present case to support the Institutional Adjustment Committee's decision, a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. This Court would be unable to exercise even limited review of such broad findings. Thus, if a proposed witness is not to be called, support for that decision and not just a broad conclusion should be reflected in the record. Prison officials should look at each proposed witness and determine whether or not he should be allowed to testify.

*Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977), *cert denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). No such support is evidenced in the hearing Summary and respondent has not submitted any further evidence to the Court in the way of affidavits to permit even a limited review of its decision. Respondent would be well advised to provide some support of this

2. State of Illinois, Department of Corrections, Regulation No. 804(II)(B)(4) requires that the notice must inform the inmate of his right to call witnesses and provide the witness request form.

nature to facilitate a limited review of such actions in the future. From the record now before it, the Court is unable to find that calling such witnesses would be "unduly hazardous to institutional safety or correctional goals." [3] *Walker v. Hughes*, 558 F.2d 1247, 1259 (6th Cir. 1977).

While petitioner's attempt to offer documentary evidence is not reflected by the Summary, respondent does not deny that it was informed of this intention. And, as the documentation had apparently been compiled previously, respondent could not have been legitimately concerned for institutional security and limiting the inmate's access to other prisoners in order to compile evidence. Normally, the Court would be inclined to find that, under these circumstances, such documentation should have been received in compliance with the requirements in *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979. However, other direct violations of the Court's Order of September 11, 1979, are readily apparent, as has been demonstrated. Therefore, the Court does not now reach any operative conclusions as to these alleged violations of petitioner's right to call witnesses and to submit documentary evidence. Given the state of the record in this proceeding, the Court ordinarily would remand to the Magistrate requiring respondent to present additional evidence justifying its refusals, as was required in *Hayes v. Walker, supra*, 555 F.2d at 630. However, the circumstances of this case are somewhat unordinary.

Respondent has failed to comply with express conditions in the Court's Order of September 11, 1979, by failing to provide petitioner written notice, including a more definite statement of the charges, and by neglecting to include the reasons for the disciplinary action taken in the Adjustment Committee Summary. Respondent characterizes these as mere technical violations and refers the Court to the decision in *United States ex rel Mitchell v. Fairman*, No. 79 C 5204 (N.D.Ill.April 14, 1980), where the Court refused to restore good time credit for violations of this nature. This Court refuses to follow that approach in this matter where respondent has already been directed to correct previous procedural shortcomings and failed to do so within three months. Once again, the Court makes no decision as to those additional aspects of the rehearing procedure, not specifically mentioned in the rehearing order, which appear to be suspect. But, in this case, the solution best designed to accommodate competing goals is a restoration of good time credits and expungement of petitioner's record.

Based on the foregoing reasons, petitioner's request for relief is GRANTED.

IT IS, THEREFORE, ORDERED (1) that petitioner's statutory good time credit shall be restored; and (2) that any reference to the alleged incident in this matter shall be expunged from petitioner's record.

IT IS SO ORDERED.

3. State of Illinois, Department of Corrections, Regulation No. 804(II)(B)(6) provides, *inter alia*: The Committee will state, in general terms, its reasons for not interviewing a witness, whether it be for irrelevance, lack of necessity or the hazards presented to institutional security or safety.