510 A.2d 613

**APPLICATION FOR LEAVE TO APPEAL (INMATE GRIEVANCE).**

**Carroll William GREENE**

v.

**SECRETARY OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.**

Inmate Grievance No. 40, Sept. Term, 1985.

Court of Special Appeals of Maryland.

July 3, 1986.

Carroll William Greene, pro se.

Submitted before MOYLAN, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Being aggrieved as the result of certain disciplinary actions having been taken against him pursuant to Rules and Procedures[1] adopted by the Patuxent Institution, Carroll W. Greene, applicant, an inmate of Patuxent Institution,

---

**1.** The Patuxent Institution has adopted a three-tiered system of rules and procedure for administering inmate discipline. See COMAR 12.14.05.02 E.(7) and 12.14.05.02 G.

At the lowest tier is the Disciplinary Incident Report. Any staff member may initiate a Disciplinary Incident Report by reporting a violation of certain specified rules to the Shift Supervisor. If the Shift Supervisor decides that a Disciplinary Incident Report (rather than a more formal procedure) is appropriate, the inmate may be punished summarily (i.e., without a hearing). The penalty may not exceed cell lock-up for the balance of the shift (or the oncoming shift if the incident occurred within one hour of a change of shift). The inmate may appeal in the same manner as is provided for more formal procedures.

At the second tier is the Disciplinary Report—Minor Violation. A more serious rule violation may be reported by any staff member to a Custody Supervisor. If the Disciplinary Report involves an infraction

filed a grievance with the Inmate Grievance Commission (the Commission). Md.Code Ann., Art. 41, § 204F(d).[1a] The commission dismissed the grievance, finding applicant's claim that he was denied due process by the actions taken and the procedures employed to be without merit. Applicant appealed pursuant to Md.Code Ann., art. 41, § 204F(e) to the Circuit Court for Howard County. That court affirmed the commission's decision. Applicant now seeks leave to appeal from that judgment.

---

of certain specified rules called Minor Violations, the Custody Supervisor may decide to offer an Informal Disposition to the inmate. If the inmate agrees, the Disciplinary Report is reduced to a Disciplinary Incident Report, and the Custody Supervisor may punish the inmate summarily. The penalty may not exceed cell lock-up, or loss of certain specified privileges, for a period not to exceed twenty-four hours. By accepting the reduction, the inmate waives his right to appeal.

If the inmate refuses an offer of Informal Disposition, or if the Custody Supervisor decides that it is inappropriate, there must be a Formal Disposition of the Disciplinary Report. In that event, the inmate is served with a Notice of Infraction, and the Superintendent reviews the Disciplinary Report. The Superintendent may unilaterally reduce the Notice of Infraction to a Disciplinary Incident Report or may refer it to the Disciplinary Committee for a hearing. If the Disciplinary Committee finds the inmate guilty, the inmate may appeal to the Associate Director of Treatment.

At the highest tier is the Disciplinary Report—Major Violation. If a Disciplinary Report involves an infraction of certain specified rules called Major Violations, the Custody Supervisor cannot decide to offer an Informal Disposition to the inmate. There must be a Formal Disposition of the Disciplinary Report in the same manner as is provided for Minor Violations.

**1a.** (d) *Submission of grievance or complaint.*—Any person confined to an institution within the Division of Correction, or otherwise in the custody of the Commissioner of Correction, or confined to the Patuxent Institution, who has any grievance or complaint against any officials or employees of the Division of Correction or the Patuxent Institution, may submit such grievance or complaint to the Inmate Grievance Commission within such time and in such manner as prescribed by regulations promulgated by the Commission. If, and to the extent that, the Division of Correction or the Patuxent Institution has a grievance or complaint procedure applicable to an inmate's particular grievance or complaint, and if the Inmate Grievance Commission deems such procedure reasonable and fair, the Commission may by regulations require that such procedure be exhausted prior to the submission of the grievance or complaint to the Commission.

In this Court, as he did in his Petition for Reversal of Administrative Agency Decision, filed in the circuit court, applicant contends that he has been denied his constitutional right to due process of law because:

1. The Disciplinary Incident Report process permits summary punishment without notice or hearing,

2. The lack of a recording or transcript of the hearing before the Disciplinary Committee prevented meaningful appellate review of that proceeding,[2]

3. The evidence before the Disciplinary Committee was insufficient to support the finding of guilt, and

4. The Disciplinary Committee was not impartial.

## THE FACTS

On April 11, 1984, applicant was given a Disciplinary Incident Report for failing to have his I.D. badge properly displayed during mass movement. He was confined to his cell for the balance of the shift. Applicant claims that although he appealed the report to the Associate Director of Treatment no response was ever made.

On April 28, 1984, applicant was given a Disciplinary Incident Report for "moving out of turn in chow line". He was confined to his cell for the balance of the second shift. His appeal of that report was denied by the Associate Director of Treatment.

On May 11, 1984, applicant was given a Notice of Infraction—Major Violation, for physical assault upon an officer. The notice of infraction charged applicant with throwing a battery at Officer Awkward, striking him in the back. Following a hearing, applicant was convicted by the Disciplinary Committee and sentenced to ten days in disciplinary

---

2. This issue was clearly presented in the applicant's appeal to the circuit court. It is not so clearly presented here. We resolve the ambiguity in favor of addressing the issue. No recording or transcript was made of the hearing before the Disciplinary Committee. The only record of that proceeding is the written report prepared by the Committee.

segregation. His appeal to the Associate Director of Treatment was denied.

According to the applicant, at the end of the hearing, after the Committee had announced its finding that the applicant was guilty as charged, he asked, "Is an inmate ever right?", to which, he claims, Denise Bruskin, a social worker member of the Committee, replied, "No." A letter from applicant to Ms. Bruskin concerning the comment produced the following response:

> Mr. Green—I received your letter in reference to the Disciplinary Hearing of 5/14/84. Had I said no in answer to your question, then your conclusion about being denied due process would be correct. The fact, is, though, that I never said anything when you asked the question "is an inmate ever right?" It was Captain Jones [another Committee member] who yelled out "No!"

Applicant's grievance, filed with the Commission, alleged both substantive and procedural due process violations flowing from the disciplinary actions. He sought expungement from his record of any mention of the disciplinary actions because

> I would like to be moved through this program, since it has been these disciplinary infractions, that has [sic] held me back in this program."

In both his grievance and in his testimony [3] before the Commission, applicant claimed that Officer Awkward's testimony before the Disciplinary Committee was contradictory and that, in essence, the officer did not know who had thrown the battery at him. The Disciplinary Committee's report, however, noted that the officer testified, "that he saw the hand in cell 14 [the applicant's cell] throwing a battery at him ... could not avoid being hit by it." [4]

---

**3.** The proceedings before the Commission were recorded and transcribed.

**4.** Applicant's request that Officer Awkward be called as a witness at the hearing before the Commission was refused "because it will not be

Concerning the comments made at the end of the Disciplinary Hearing, in addition to his testimony, applicant presented the Bruskin memorandum. He maintained that the comment demonstrated that the Disciplinary Committee was not impartial. Despite applicant's request that she do so, Bruskin did not appear as a witness at the hearing.[5] Captain Jones, however, testified about the occurrence:

> I don't recall making the statement. I'm just guessing from the ticket here from a while back that's what it said. I don't remember now. The question was about whether the inmate is always right or the officer is right. I don't know if this question arose at the hearing or not. I mean he said the inmate (inaudible). I just don't remember (inaudible).

Finally, applicant argued that the Disciplinary Incident Reports were unconstitutional because they permitted him to be punished without an opportunity to defend himself; the procedure failed to afford an inmate minimal procedural due process.

The Commission determined that the grievance was without merit, and dismissed it.[6]

It concluded that: the Disciplinary Incident Report process did not violate the applicant's constitutional right to due process; Officer Awkward's eyewitness testimony be-

---

necessary to obtain testimony from Officer Awkward which would be cumulative to the testimony already given at your Disciplinary Hearing," and because the hearing before the Commission "is not expected to be a *de novo* (or second) adjustment hearing to prove your guilt or innocence." Thus, the officer did not testify at the Commission hearing.

5. Although the record contains no explanation for Bruskin's failure to appear as a witness, applicant does not rely on her failure to appear as a basis for his due process claim, nor could he, since the right of confrontation is not a minimal due process requirement. *See Ponte v. Real,* 471 U.S. 491, 496–497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985).

6. The dismissal constitutes the "final decision of the Secretary of Public Safety and Correctional Services for purposes of any judicial review." Md.Code, Art. 41, Sec. 204F(f)(1).

fore the Disciplinary Committee provided a sufficient evidentiary basis to support the finding that the applicant was guilty as charged; and

> [t]he persuasiveness of Mr. Greene's allegation that he had not received a fair and impartial hearing on May 14, 1984 has been attenuated through Captain Jones' testimony to the effect that he could not recall making, or having heard anyone else make, the alleged statements which served as the basis of Mr. Greene's contention in this regard.

### THE LAW

The seminal case concerning due process rights of inmates in the administration of prison discipline is *Wolff v. MacDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). It was well summarized by Judge Blair in *Fitchette v. Collins*, 402 F.Supp. 147, 154–55 (D.Md.1975):

> In *Wolff v. MacDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court for the first time explicated the specific elements of procedural due process that must be afforded inmates at prison disciplinary hearings. These minimum requirements are (1) advance written notice of the claimed violation of prison rules; (2) a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the right of the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. The Court also held that, in the context of prison disciplinary hearings, due process does not require a right of an inmate to confrontation and cross-examination of adverse witness or a right to counsel. *Id.* at 563–70, 94 S.Ct. 2963 [at 2978–81]. As a general due process matter, of course, the inmate would be entitled to a fair hearing by an impartial tribunal. *See id.* at 570–71, 94 S.Ct. 2963 [at 2981–82].

Although the minimum procedural due process requirements for prison disciplinary hearings were enunciated, in

*Wolff,* in the context of a case in which the punishment affected the term of confinement, *i.e.,* forfeiture or withholding of good time credits, the Court did not limit their application to such cases. To the contrary, the Court specifically observed that such procedures also applied in cases in which the punishment "represents a major change in the conditions of confinement," *e.g.* solitary confinement.[7] *Wolff,* 418 U.S. at 571-72 n. 19, 94 S.Ct. at 2982 n. 19. On the other hand, the Court was careful to limit the scope of the applicability of such requirements:

> We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges.

*Id.* at 572, 94 S.Ct. at 2982.

Concerning the rationale for requiring a "written statement by the factfinders as to the evidence relied on and reasons" for the disciplinary action, the Court noted that "the actions taken at such proceedings may involve review by other bodies," 418 U.S. at 565, 94 S.Ct. at 2979, and may furnish the basis of a decision to transfer the inmate to another institution or may be considered in making parole decisions. Id. Therefore, the Court concluded that:

> [w]ritten records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental

---

7. The prison disciplinary regime at issue in Wolff provided "basically two kinds of punishment for flagrant or serious misconduct. The first is forfeiture or withholding of good-time credits, which affects the term of confinement, while the second, confinement in a disciplinary cell, involves alteration of the conditions of confinement. If the misconduct is less than flagrant or serious, only deprivation of privileges results." *Wolff,* 418 U.S. at 547, 94 S.Ct. at 2970.

constitutional rights may have been abridged, will act fairly.

*Id.* at 564–5, 94 S.Ct. at 2979.

With these principles in mind, we now proceed to consider their application to the issues raised in the instant case.

### 1. *Disciplinary Incident Reports*

█ Applicant contends that the Disciplinary Incident Report process violates the procedural requirements enunciated in *Wolff.* He claims, citing *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), that "minimum notice and a right to respond are due an inmate faced with even a temporary suspension of privileges." He further claims, citing *McKinnon v. Patterson,* 568 F.2d 930 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), that "the *Wolff* requirements are also applicable to keeplock or restriction to one one's cell." Applicant's reliance on *Baxter* and *McKinnon* is misplaced.

In *Baxter,* the U.S. Court of Appeals for the Ninth Circuit held, as the applicant claims, that minimum notice and a right to respond are due an inmate faced even with a temporary suspension of privileges. *Clutchette v. Procunier,* 510 F.2d 613 (1975). The Supreme Court, however, pointing out that "the Court of Appeals acted prematurely" on that issue, because the record before the Court showed that the inmates involved in that case had been disciplined for "serious misconduct," 425 U.S. at 323–24, 96 S.Ct. at 1560–61, reversed. Thus, the Court left open the question whether an inmate may be deprived of privileges in the absence of due process safeguards. *Id.*

The question presented in *McKinnon* was whether the *Wolff* requirement of advance written notice applies to proceedings in which the maximum sanction for misbehavior is "keeplock" (confinement to one's cell) for not more than two weeks. Focusing primarily upon the length of the confinement which may be imposed, the Court concluded

> that keeplock is not significantly different from the other forms of punishment which we have held to constitute

substantial deprivations. Accordingly, we hold that the imposition of keeplock by the Adjustment Committee must be pursuant to a hearing with minimal due process safeguards.

568 F.2d at 938. The court added:

We express no view, however, as to how we would rule in a case involving hearings on charges for which the maximum punishment were either loss of certain privileges or keeplock of a duration so short that it could not be considered a substantial deprivation.

568 F.2d at 939, n. 9.

Turning to the case *sub judice*, the maximum punishment possible pursuant to a Disciplinary Incident Report is confinement to one's cell for the balance of a "shift", which we surmise to be no more than eight hours. Confinement in one's cell for so short a period is not a substantial deprivation. Accordingly, we hold that, ordinarily, the *Wolff* procedural requirements do not apply to the mere imposition of punishment pursuant to Disciplinary Incident Reports. This does not end our consideration of this issue, however.

■ Applicant claims that "[b]ecause of these tickets I have been held back in the program." By this claim, applicant suggests that there are collateral consequences of disciplinary actions taken pursuant to a Disciplinary Incident Report and that these consequences affect an inmate's term of confinement or involve a major change in the conditions of that confinement. If this is so, the *Wolff* requirements must be met before disciplinary action may be taken pursuant to Disciplinary Incident Reports. *See Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979; *McKinnon*, 568 F.2d at 938.

We are unable to determine from this record what constitutes "the program" to which applicant refers, not to mention, whether applicant has been "held back" in it because of "these tickets," or whether "these tickets" affect the term or conditions of his confinement. Therefore, we will remand the case to the circuit court for further remand to

the Secretary for further proceedings. The Secretary shall determine if there are collateral consequences of disciplinary action taken pursuant to a Disciplinary Incident Report. If there are such consequences, he shall state what they are and determine whether they affect the term or conditions of applicant's confinement. In the event that he finds that the collateral consequences of a disciplinary action does affect the term or conditions of applicant's confinement, the Secretary shall fashion an appropriate remedy, which may include the relief applicant seeks.

### 2. *Appellate Review*

■ Applicant next contends that, "because there are no transcripts or recordings of the Disciplinary hearings, a reviewing body would be unable to determine whether a decision was made for a permissible reason or for no reason at all." He claims that the lack of transcripts or recordings is a denial of due process.[8]

The "written record" referred to in *Wolff* as being necessary "to insure that administrators, faced with possible scrutiny by ... perhaps even the courts, ... will act fairly," was explicitly described by the Court as a "written statement *by the factfinders* as to the evidence relied on." (Emphasis added.) *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978. The record in the instant case includes such a statement. Thus, applicant's claim that the lack of a transcript or recording of the disciplinary hearing denied him due process is without merit.

Undaunted, applicant also asserts, citing *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.1981); *Dyson v. Kocik,* 689 F.2d 466 (3rd Cir.1982); and *United States ex rel. Speller v. Lane,* 509 F.Supp. 796 (S.D.Ill.1981), that the written statement prepared by the Disciplinary Committee was inadequate.

---

**8.** The applicant cites *Butz v. Economu,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that "there should be a reasonable opportunity for a party involved to challenge by appeal the decision." That case is totally inapposite; the proposition for which it is cited appears nowhere in the case.

More specifically, noting that a report which simply stated "we recognize and consider the resident's statement, however, we accept the reporting officer's charges," was found to be inadequate in *Chavis* because it failed to mention the evidence relied upon or the reasons for the Committee's conclusion; he claims that "[t]his was done in the present situation." We disagree.

The Disciplinary Committee's report not only summarizes the testimony of the witnesses who appeared before it, but it gives the rationale for the Committee's conclusion [9] as well. Thus, the report satisfied minimum due process requirements. *See Speller, supra,* 509 F.Supp. at 800, and *Dyson, supra,* 689 F.2d at 467.

### 3. *Sufficiency of the Evidence*

■ Applicant next challenges the Disciplinary Committee's findings. He argues that he was found guilty of physical assault upon an officer "on unsubstantial evidence."

■ The standard of judicial review of decisions of the Secretary in inmate grievance matters is the substantial evidence test. *Hewitt v. Dept. of Pub. Safe. & Correct.,* 38 Md.App. 710, 715, 382 A.2d 903 (1978); *Bryant v. Dept. of*

---

9. The Committee's report in the instant case includes the following:
   "Statement of Case: McRae [a witness] says when Officer was walking past cell 8, battery hit him in back of head. Says Officer turned around and asked if anyone saw who threw battery. Carter [another witness] gave same story as McRae.
   Inmate stated that he didn't throw anything at Officer. He'd been having problems with Officer over past 3 days and inmate had talked to 3 Supervisors about it. Greene felt Officer was holding a grudge. Said Officer said he'd hit him in the back yet let him out of his cell. Officer also is said to have gone to other cells asking if any of those inmates threw batteries. Officer stated that he saw the hand in Cell 14 throwing the battery at him but could not avoid being hit by it. Officer did say he let Greene out of cell after assault (because he is a tier worker).
   Rationale and Recommendation of Committee for Finding and Disposition: Guilty. Committee believed Officer's account and that it is just as possible that inmate had a grudge against him as vice-versa."

*Pub. Safety,* 33 Md.App. 357, 369, 365 A.2d 764 (1976). *But see Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed. 356 (1985) (minimum due process requirements under the U.S. Constitution are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced.") Substantial evidence exists when, upon review of the record, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is found. *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296 (1985); *Comptroller v. Haskin,* 298 Md. 681, 693, 472 A.2d 70 (1984); *Hewitt, supra; Bryant v. Dept. of Public Safety, supra.* The officer's testimony "that he saw the hand in Cell 14 [applicant's cell] throwing the battery at him but could not avoid being hit by it" is such evidence. There was substantial evidence in the record to support the Disciplinary Committee's finding of guilt.

### 4. *An Impartial Tribunal*

█ Finally, applicant alleges that he was denied his right to a fair and impartial disciplinary hearing, and, therefore, due process. The basis of this allegation is, as we have seen, the negative response by one of the committee members to applicant's question, "Is an inmate ever right?"

In view of the Bruskin memorandum and Captain Jones' equivocal testimony before the Commission, there seems to be little doubt that applicant's reporting of the incident is substantially accurate. The only doubt that exists is as to which of the committee members, Bruskin or Jones, made the comment. The Commission, however, evaded making a finding either as to whether the incident occurred or as to its effect on the fairness of the hearing.

Since our review of an Inmate Grievance Proceeding is "limited to a determination of whether there was a violation of any right of the inmate protected by federal or State laws or constitutional requirements", Md.Code Ann. art. 41, § 204F(*l*), and the Commission is entrusted with the duty to make findings of fact, § 204F(f), we conclude that further

proceedings on this issue are necessary. We, therefore, remand to the circuit court for further remand to the Secretary so that he may determine whether, and, if so, by whom, the statement was made; if made, what, if any effect it had on the fairness of applicant's hearing; *See Scott v. State*, 289 Md. 647, 655, 426 A.2d 923 (1981) and *Marshall v. State*, 291 Md. 205, 214, 434 A.2d 555 (1981); and, if necessary, determine an appropriate remedy.

APPLICATION FOR LEAVE TO APPEAL GRANTED.

JUDGMENT VACATED.

CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH DIRECTIONS TO REMAND THE CASE TO THE SECRETARY OF PUBLIC SAFETY AND CORRECTIONAL SERVICES FOR FURTHER PRO-CEEDINGS CONSISTENT WITH THIS OPINION.